IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAM S. McDOWELL,

        Plaintiff,

       v.                                                    CIV No. 12-895 LH/WPL

BOARD OF COUNTY COMMISSIONERS
OF CURRY COUNTY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the County Defendant's Motion for Summary Judgment and Memorandum in Support Thereof (ECF No. 24). The Court, having considered the motions, briefs, pleadings, evidence, relevant law, and otherwise being fully advised, concludes that this motion is well taken and will be **granted**, resulting in dismissal of this lawsuit.

### I.  PROCEDURAL BACKGROUND

This case was removed to this Court from the Ninth Judicial District Court for the State of New Mexico, pursuant to Defendants' Notice of Removal (ECF No. 1). The gravamen of the complaint is that Plaintiff was arrested and placed in handcuffs which injured her, that she was placed for several hours in a freshly painted, non-ventilated cell, and that she was not given any medical treatment for injury she allegedly incurred while in that cell. The complaint is poorly

drafted (ECF No. 1-2). It contains no separate Counts, but merely recites a string of events. Paragraphs 19 and 21 are the most substantive paragraphs and state that, due to the actions and inactions of the booking officer and other personnel at the Curry County Adult Detention Center ("CCADC"), Plaintiff has incurred "pain and suffering, emotional distress, injury, medical malpractice and/or negligence, cruel and unusual punishment, violation of her civil rights, medical expenses, possible long term medical effect(s), and other damages attendant to the conduct of the entities and the injuries incurred, . . . ." Plaintiff does not specify which constitutional rights she claims were violated. The Court presumes she is alleging excessive force under the Fourth Amendment (relating to her allegations about handcuffing), and deliberate indifference to her medical needs under the Eighth Amendment. The complaint names only one party as defendant -- the Board of County Commissioners of Curry County. The "Wherefore" clause of the complaint states that Plaintiff is entitled to whatever damages, attorney's fees and costs are allowable under New Mexico and Federal Law.

## II. UNDISPUTED FACTS[1]

Resolving all reasonable inferences and doubts in favor of Plaintiff, the non-moving party, and construing all evidence in the light most favorable to the Plaintiff, the Court finds that the following facts are not in dispute and are relevant to this matter:

On July 21, 2010, Plaintiff was arrested for driving while intoxicated, at which point she refused field sobriety tests, and just declared, "take me to jail." (Curry County Def.'s Mot. for Summ. J. (ECF No. 24), Undisputed Fact ("UF") ¶ 1). The Clovis Police Department

---

[1] Plaintiff failed to create any dispute of fact with regard to Defendant's rendition of facts, to the extent they are cited herein by the Court. There are certain additional facts that Plaintiff mentions in her Response Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 27) in the Response to "Statement of Undisputed Facts" ("RSUF"), which Defendant does not dispute in its reply brief. These additional facts, to the extent that they are relevant, are also cited herein.

effectuated Plaintiff's arrest and handcuffed her incident to that arrest.  (*Id.* ¶ 2).  Plaintiff was transported to the CCADC.  (*Id.* ¶ 3).  When the officers tried to remove the handcuffs, the key broke off, so they twisted the handcuffs, and Plaintiff's wrists became red, until the officers were able to cut off the handcuffs with bolt cutters.  (*Id.*).  Plaintiff claims that her wrists were bruised, but she never sought any medical treatment for her wrists, nor does she have any photographs of such injury.  (*Id.*).  Plaintiff's medical records indicate that she bruises easily.  (*Id.*).

Plaintiff admitted in her deposition that she was under the influence of alcohol when she arrived at CCADC.  (*Id.* ¶ 4).  She claims that she was put in a cell that was freshly painted, and that as a result she suffered a headache, chills, hallucinations, a sore throat, chest pain, and breathing problems.  (*Id.*).  She claims she complained about these conditions while she was at the CCADC, but does not know who, if anyone, heard her.  (*Id.*).

At Plaintiff's arraignment, she reported her physical complaints to the presiding judge, and then saw a nurse who gave her ibuprofen.  (*Id.* ¶5).  After her release from custody, she went to an emergency room at a hospital, where she was given breathing treatments, an inhaler, and medicine for a headache.  (*Id.*).  Plaintiff immediately noticed hair loss, including eyelashes.  She next sought treatment on October 18, 2010 for medical conditions which included easy bruising, loss of eyelashes, hair loss, insomnia, irritability, and depression.  (Pl.'s Resp. (ECF No. 27), RSUF ¶ 6).  At that time, she denied that any trauma or other injury could account for the increased bruising.  (Def.'s Mot. for Summ. J. (ECF No. 24), UF ¶ 7).  Plaintiff testified that at that time, with regard to issues with her respiratory and cardiovascular systems, everything seemed within normal limits.  (Pl.'s Resp. (ECF No. 27), RSUF ¶ 7).  The doctor concluded that Plaintiff's complaints were early signs of menopause.  (Def.'s Mot. for Summ. J. (ECF No. 24), UF ¶ 8).  She subsequently attended approximately thirty-two (32) counseling sessions.  (*Id.*)

The next time Plaintiff saw a health care provider was in April of 2011 for allergy issues. (*Id.* ¶ 10). Other than a gynecologist, the next health care provider she saw was in February 2012, at which point her allergies were described as a "perennial" problem for her. (*Id.*). She also testified that no medical provider ever indicated that any long term effects were related to this incident. (*Id.* ¶14).

### III. ARGUMENTS OF THE PARTIES

#### A. DEFENDANT'S ARGUMENTS

The County argues that Plaintiff's claim regarding removal of handcuffs does not establish a constitutional violation. Specifically, it argues that Plaintiff's alleged injury is insufficient to support an excessive force claim, given a lack of evidence that she suffered more than a de minimus injury.

Insofar as the claim about inadequate ventilation is concerned, Defendant characterizes Plaintiff's position as being that her constitutional rights were violated because a County employee violated existing County policies. Defendant asserts that a violation of County policy would not amount to a constitutional violation, because Plaintiff has failed to establish that an actual County policy was unconstitutional. Furthermore, Defendant argues that Plaintiff cannot rely upon the theory of respondeat superior, to impose liability on the County, even if a County employee's actions caused a constitutional violation.

Finally, the County argues that Plaintiff's state law claim for negligence fails because Plaintiff has not provided the Court with evidence that the County exposed her to the type of dangerous condition which New Mexico case law would recognize as falling within a waiver of immunity under the New Mexico Tort Claims Act ("NMTCA").

### B. PLAINTIFF'S ARGUMENTS

Plaintiff argues that the County has established policies and procedures that regulate the conduct of its employees and living conditions of inmates, and cites the Court to specific standards of professional conduct. (Curry County Detention Center Policy and Procedures, Section B-160, Pl.'s Ex. 6). Plaintiff also attaches and discusses policies and procedures regulating contact with, and supervision of, inmates and ex-inmates. (*Id.*, Sections B-210 and F-110, Pl.'s Ex. 7; *Id.*, Section I-160, Pl.'s Ex. 8; *Id.*, Section K-100, Pl.'s Ex. 9). Plaintiff argues that the County has liability, because "[t]he County and its employees violated the sections of their policies and procedures, as stated herein, and Ms. McDowell suffered damages and personal injury as a direct result of these violations," (Pl.'s Resp. at 10), and that County employees' placement of her in an insufficiently ventilated cell clearly demonstrates deliberate indifference to her health by those employees. (*Id.* at 8).

As to her claim for negligence, Plaintiff contends that it falls within the waiver of tort immunity, under § 41-4-6 of the NMTCA. More specifically, she argues that the County's refusal to provide its inmates with proper medical treatment, following exposure to a dangerous environment, created a dangerous condition, sufficient to invoke liability under this section.

### III. SUMMARY JUDGMENT LEGAL STANDARDS

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed.R.Civ.P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.  LEGAL ANALYSIS

### A.  USE OF HANDCUFFS

The first question is whether Plaintiff has demonstrated that a reasonable jury could find that her Fourth Amendment rights were violated because the officers applied excessive force. Plaintiff presents very little in the way of argument or evidence to support a claim that handcuffing violated her constitutional rights. Plaintiff does not contend that the initial decision to handcuff her was unreasonable. Rather, she cites the Court to portions of her deposition testimony, wherein she described what happened when officers tried to remove her handcuffs at the CCADC. (Pl.'s Ex. 4 (ECF No. 27-4)). She testified that the key broke off in the handcuffs, which became tighter on her hands and that the officer tried 20-30 minutes to remove the cuffs.

(*Id.* at 38:17-20). Further she testified that "it got to where it was hurting so bad, and you could tell it was really red, that they finally got bolt cutters and actually cut it off, but quite a bit of twisting"; that she never sought medical treatment for her wrists although they were very bruised. (*Id.* at 39:3-11). She stated that she has no photographs depicting injury to her wrists (*Id.* at 39:12-14). Later in her deposition she testified that the prison guard was very unprofessional, that he was "really arrogant" and "pretty mean." (*Id.* at 99:19). She testified that when he was hurting her, she "kept asking him to stop, that it was hurting, and -- you know, he was rougher. It just became -- what -- the way he was acting and taking care of the handcuffs and how long it was taking and how much it was hurting and just -- you know, just the comments he made or how he said things, you know, it upset me." (*Id.* at 99:23-100:3). Later she testified that "he was hurting me quite a bit." (*Id*. at 100:20-21).

Handcuffing itself is not necessarily an excessive use of force in connection with an arrest. In *Cortez,* the Tenth Circuit explained that in a handcuffing case "to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *See Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007).

In this instance, Plaintiff does not contend that handcuffs should not have been initially employed, but rather, complains about the length of time she was in handcuffs and pain she experienced, due to the difficulty the officers encountered in removing the handcuffs. Accordingly, Plaintiff has not satisfied the first prong of her burden of proof to show that greater force than would have been reasonably necessary was employed to effect a lawful seizure.

Furthermore, on the facts alleged, Plaintiff has failed to show that a reasonable jury could conclude that she has evidence of actual injury that is not de minimis. Plaintiff's testimony is that the officer tried for 20-30 minutes to remove the cuffs after the key broke off; that the cuffs were becoming tighter and it "was hurting so bad" and her wrists were "really red." This is not an instance where an officer was ignoring a detainee's complaints, but rather one where technical difficulties were encountered. Even taking Plaintiff's allegations as true and viewing the evidence in the light most favorable to her, Plaintiff has not established that these actions violated her right to be free of excessive force under the Fourth Amendment. Plaintiff's deposition testimony indicates pain, redness and subsequent bruising but no need for medical treatment. As noted in *Fisher v. City of Las Cruces*, 584 F.3d 888, 900 (10th Cir. 2009), this is not an actionable excessive force claim because the Plaintiff is complaining only of fleeting discomfort from handcuffing, or red marks or swelling that disappear in a few hours or days. S*ee also Cortez v. McCauley*, 478 F.3d at 1129 (concluding that injury was insufficient to support an excessive force claim when the only evidence in the record was Cortez's affidavit asserting that the handcuffs left red marks that were visible for days).

For these reasons, the Court concludes that a reasonable jury could not find Plaintiff suffered any injury that was more than de minimis and thus Plaintiff's claim for excessive force fails.

### B. INADEQUATE VENTILATION

Plaintiff's next constitutional claim is that she was placed in a newly painted cell without adequate ventilation, that this caused her to suffer respiratory problems, and that the County was deliberately indifferent to her health and medical needs. Pretrial detainees are protected under

the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). Under the Due Process Clause however, detainees are "entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997)(quotation omitted). The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Deliberate indifference to pretrial detainee's serious injury is actionable under Section 1983. A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health or safety. *Id.* at 834.

As already noted, Plaintiff has sued only the County. She has neither named nor made any apparent effort to ascertain the identity of the individuals who allegedly placed her in an unhealthy environment. Local governments are subject to § 1983 liability only when their official policies or customs cause a plaintiff's injuries. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 685, 690 (1978). Indeed, there must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Accordingly, to establish its liability, Plaintiff must establish that County policies caused the alleged constitutional violations. *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997)(A local government may be held liable for its employees' constitutional violations only when those employees are "execut[ing the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of

some nature caused a constitutional tort." *Monell v. New York City Dept. of Soc. Servs.* 436 U.S. at 691. Thus, as prerequisites to liability of the County, it is incumbent upon Plaintiff to show (1) that a constitutional violation occurred; and (2) that a governmental policy was the moving force behind the violation. *See Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1320 (10th Cir. 1998).[2]

Plaintiff fails to articulate or provide evidence that indifference to her health and medical needs was pursuant to an unlawful County policy or practice. Rather, her argument is that her injuries were caused by *violation* of various County policies. (Pl.'s Resp. at 10). Under *Monell* and *McMillian*, this argument does not establish liability of the County.

**C. NEGLIGENCE**

Plaintiff asserts an amorphous state law claim of negligence against the County. Read in the light most favorable to Plaintiff, the Court interprets this claim to be that the County negligently ignored Plaintiff's medical needs after her detention in a freshly painted cell and that this caused her injury. Assuming without deciding that immunity has been waived for negligence in this case under the NMTCA, Plaintiff's claim cannot succeed, as will be explained below, because Plaintiff has failed to provide sufficient, competent evidence that she suffered any injury resulting from negligence of the County.

The only evidence Plaintiff has presented, relevant to causation is as follows: her testimony that the County detained her in a freshly painted, unventilated cell for four hours

---

[2] Without any evidentiary support whatsoever, counsel for Plaintiff also argues that "it is a custom at CCADC to have the inmates paint in and around the facility, and to use the cells for inmates shortly after the cells and other areas have been painted." (Pl.'s Resp. at 11). A governmental custom includes "persistent and widespread . . . practices of . . . officials." *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. at 690-91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Given that this argument of counsel about "custom" is unsubstantiated, in that Plaintiff presents no evidence of persistent and widespread practices of officials, the Court will not consider it.

(Pl.'s Ex. 4 (ECF No. 24-7) 109:6-9); her opinion that she suffered a headache, chills, hallucinations, a sore throat, chest pain and breathing problems as a direct result of being held in a freshly painted, non-ventilated cell at the CCADC (*Id*. 39:22-40:3); Plaintiff's description of her medical history following this incident, as set forth on page 3 of this Memorandum Opinion and Order; and, lastly, Plaintiff's Exhibit 5, which appears to be a hospital emergency room form, containing patient instructions. The following language is handwritten on this form: "Use inhaler as needed. Return to ER for any concerns. Diagnosis Respiratory Chemical Exposure." Plaintiff signed this form, acknowledging receipt of these instructions on July 25, 2010. The dispositive question before the Court is whether or not this evidence constitutes sufficient evidence of causation of injury, upon which a jury could return a verdict of negligence by the County, in favor of Plaintiff.

This negligence claim is governed by New Mexico law. An act or omission may be a proximate cause of any injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury. *Talbott v. Roswell Hospital Corp.*, 138 N.M. 189 (N.M.Ct.App. 2005). Generally speaking, proximate cause is a question of fact to be determined by the fact-finder. *Pollock v. State Highway and Trans. Dept.*, 127 N.M. 521, 526 (N.M.Ct.App. 1999). "The only time this is not true is 'when facts regarding causation are undisputed and all reasonable inferences are plain, consistent and uncontradictory.' " *Id.* at 526-27. To avoid summary judgment, Plaintiff must come forward with facts from which the County's alleged negligent cause of injury to her "may be reasonably inferred." *See id.* at 527. A burden rests upon Plaintiff to "introduce evidence to remove the cause from the realm of speculation and to give it a solid foundation upon facts." *See Sanders v. Atchison, Topeka & Santa Fe Railway Co.*, 65 N.M. 286, 288-89 (N.M. 1959).

### 1. PLAINTIFF'S OPINION ABOUT CAUSATION OF HARM

"[C]ourts ordinarily do not permit juries to draw a conclusion regarding medical diagnosis or medical causation without expert testimony directly supporting the conclusion. Indeed, it is generally required that the expert medical witness testify to his or her conclusion to a 'reasonable medical probability,' or words of similar import." *State v. Newman*, 109 N.M. 263, 270 (Ct. App. 1989)(J. Hartz, concurring). The New Mexico Supreme Court has held that the cause and effect of the physical condition (loss of hearing) lay in a field of knowledge in which only a medical expert can give a competent opinion. *See Woods v. Brumlop*, 71 N.M. 221, 223 (1962)(noting on the limited admissibility of lay testimony as to the cause of a physical condition, and that where the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition). Other New Mexico cases have consistently applied this approach in negligence cases on the issue causation of damages. *See, e.g., Rael v. F&S Co., Inc.*, 94 N.M. 507 (Ct.App. 1980)(concluding that it was error for the trial court to give a future pain and suffering instruction in the absence of testimony from a medical expert that the minor child's headaches were caused by the explosion of defective fireworks or that they would continue into the future).

Having reviewed these cases, the Court is persuaded that under New Mexico law, Plaintiff cannot raise a fact issue on the element of causation in the absence of expert causation testimony. The burden of proving with reasonable certainty the causal connection between Plaintiff's detention and her respiratory symptoms rests squarely upon Plaintiff. In meeting this

burden, only the testimony of a properly-qualified expert, familiar with her symptoms and causes, is of any value. Plaintiff has failed to come forward with an expert opinion regarding the cause of any injury to her, merely relying on her own conclusions that her symptoms were "the result of" being put in a freshly painted cell. Toxicity and respiratory problems are not simple issues. When the effect of a substance[3] on the human body is not a matter of common knowledge, courts generally will not permit fact finders to speculate on a causal connection. The testimony of Plaintiff as to the cause of her symptoms would be nothing more than mere conjecture or surmise in a field of knowledge in which only a medical expert may offer a competent opinion. This Court is unwilling to conclude that the physical effect on Plaintiff, following a four hour confinement in a cell, freshly painted with paint of an unknown type or origin, is within the common knowledge and experience of an average person. Plaintiff's personal perceptions are simply inadequate to establish a causal connection between her detention and her claim that she incurred a significant injury of chemical respiratory exposure. Plaintiff's reliance on her own conclusions and failure to offer any medical causation testimony, providing a medical basis to conclude that she suffered physical harm, is insufficient to causally link her detention with her alleged physical harm.

## 2.  EXHIBIT 5

The Court next analyzes the evidence provided in Exhibit 5. This exhibit is a medical form that has not been authenticated and is not the type of admissible evidence, typically considered by this Court pursuant to its analysis of a Rule 56 motion for summary judgment.

---

[3] Plaintiff does not provide the Court with specific admissible evidence as to what type of paint was used in the cell, prior to her occupancy of it. Her resort to the Internet and provision of Exhibits 13 and 14, from the United States Environmental Protection Agency website, about possible hazards for latex and oil-based paint, are disregarded by the Court.

Without a proper foundation, Exhibit 5 does not constitute an exception to the hearsay rule of evidence as a medical record.  FED.R.EVID. 803(4).  Hearsay is generally inadmissible in a summary judgment hearing.  *See Young v. Dillon Cos., Inc.,* 468 F.3d 1243, 1252 (10th Cir. 2006).

Even if the Court were to consider it in its analysis, this form is not particularly probative.  It is not signed by a doctor.  It contains nothing other than the language noted above.  It does not indicate the source of the referenced chemical respiratory exposure or when such exposure occurred.

For the foregoing reasons, the Court concludes that it would be improper for the Court or a jury to rely upon Plaintiff's proffered evidence, including her deposition testimony and opinions stated therein, in determining the cause of the symptoms she described.  Plaintiff has failed to prove that she suffered any injury as a result of her detention.  This failure to establish causation of injury is fatal to her negligence claim.

**WHEREFORE, IT IS HEREBY ORDERED** that the County Defendant's Motion for Summary Judgment and Memorandum in Support Thereof (ECF No. 24) is hereby **granted**, and that this matter is **dismissed with prejudice.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**